UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MIKE KASSEM                     Civil Action No.: 16-11736
ALTYG,                          Honorable Victoria A. Roberts
                                Magistrate Judge Elizabeth A. Stafford

                Plaintiff,

v.

NANCY A. BERRYHILL,
ACTING COMMISSIONER
OF SOCIAL SECURITY,

                Defendant.

_____/

## REPORT AND RECOMMENDATION ON CROSS-MOTIONS FOR SUMMARY JUDGMENT [ECF. NOS. 16, 20]

Plaintiff Mike Kassem Altyg appeals a final decision of defendant

Commissioner of Social Security (Commissioner) denying his applications

for disability insurance benefits (DIB) and supplemental social security

income benefits (SSI) under the Social Security Act.  Both parties have filed

summary judgment motions, referred to this Court for a report and

recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).  After review of the

record, the Court finds that the administrative law judge's (ALJ) decision is

supported by substantial evidence, and thus **RECOMMENDS** that:

- the Commissioner's motion [ECF No. 20] be **GRANTED**;

- Altyg's motion [ECF No. 16] be **DENIED**; and

- the Commissioner's decision be **AFFIRMED** pursuant to sentence four of 42 U.S.C. § 405(g).

## I.   BACKGROUND

### A.   Altyg's Background and Disability Applications

Born February 4, 1966, Altyg was 47 years old when he submitted his applications for disability benefits in March 2013.  [ECF No. 6-5, Tr. 128-40].  Though he testified to having only a middle school education, his forms indicate that he completed the twelfth grade.  [ECF No. 6-2, Tr. 28; ECF No. 6-6, Tr. 161].  He has past work experience in child care and construction sales.  [ECF No. 6-2, Tr. 18; ECF No. 6-6, Tr. 161].  Altyg alleges a disability onset date of February 2, 2011, and that he is disabled by back injury, high blood pressure, broken right foot, broken left knee, and plates in back.  [ECF No. 6-6, Tr. 160].

After the Commissioner denied both disability applications initially, Altyg requested a hearing, which took place in September 2014, during which he and a vocational expert (VE) testified.  [R. 6-2, Tr. 24-46].  In an October 28, 2014 written decision, the ALJ found Altyg to be not disabled.  [*Id.*, Tr. 9].  The Appeals Council denied review, making the ALJ's decision

the final decision of the Commissioner, and Altyg timely filed for judicial review.  [*Id.*, Tr. 1-3; ECF No. 1].

### B.    The ALJ's Application of the Disability Framework Analysis

DIB and SSI are available for those who have a "disability."  *See Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007).  A "disability" is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).

The Commissioner determines whether an applicant is disabled by analyzing five sequential steps.  First, if the applicant is "doing substantial gainful activity," he or she will be found not disabled.  20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).[1]  Second, if the claimant has not had a severe impairment or a combination of such impairments[2] for a continuous period of at least 12 months, no disability will be found.  *Id.*  Third, if the claimant's severe impairments meet or equal the criteria of an impairment

---

[1] Sections 1520(a)(4) and 920(a)(4), which pertain to DIB and SSI respectively, list the same five-step analysis.

[2] A severe impairment is one that "significantly limits [the claimant's] physical or mental ability to do basic work activities."  § 1520(c); § 920(c).

set forth in the Commissioner's Listing of Impairments, the claimant will be found disabled. *Id.* If the fourth step is reached, the Commissioner considers its assessment of the claimant's residual functional capacity, and will find the claimant not disabled if he or she can still do past relevant work. *Id.* At the final step, the Commissioner reviews the claimant's RFC, age, education and work experiences, and determines whether the claimant could adjust to other work. *Id.* The claimant bears the burden of proof throughout the first four steps, but the burden shifts to the Commissioner if the fifth step is reached. *Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994).

Applying this framework, the ALJ concluded that Altyg was not disabled. At the first step, he found that Altyg had not engaged in substantial gainful activity since his alleged onset date. [ECF No. 6-2, Tr. 11]. At the second step, he found that Altyg had the severe impairments of "asthma; sleep apnea; bipolar disorder/anxiety disorder; motor vehicle accident resulting in multiple closed fractures of the pelvis and closed fracture and dislocation of the left patella; and alcohol abuse." [*Id.*]. Next, the ALJ concluded that none of his impairments, either alone or in combination, met or medically equaled the severity of a listed impairment. [*Id.*, Tr. 12-13].

4

Between the third and fourth steps, the ALJ found that Altyg had the

RFC to perform light work[3] except:

> [He can] never use ladders, scaffolds, ropes, stairs, kneel or crawl; occasionally use ramp, stoop, crouch or balance; avoid walking on uneven surfaces; avoid concentrated exposure to vibrations, fumes, odors, gases and respiratory irritants; frequently but not constantly handle and finger with the right upper extremity; occasionally bend, twist and turn at the waist; do no commercial driving; no foot pedal use; no pushing or pulling; simple, unskilled work; and no jobs involving concentration on detailed/precision tasks or multitasking, reading, computing, calculating or problem solving.

[*Id.*, Tr. 13].  At step four, the ALJ found that Altyg was unable to perform

any past relevant work.  [*Id.*, Tr. 18].  With the assistance of VE testimony,

the ALJ determined at step five that Altyg could perform occupations such

as packer, sorter, and small products assembler, and that those jobs

existed in significant numbers in the economy, rendering a finding that he

was not disabled.  [*Id.*, Tr. 18-19].

---

[3] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds.  Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls."  20 C.F.R. §§ 404.1567(b) and 416.967(b).

## II.   ANALYSIS

### A.

Pursuant to § 405(g), this Court's review is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made in conformity with proper legal standards. *Gentry v. Comm'r of Soc. Sec.*, 741 F.3d 708, 722 (6th Cir. 2014). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (internal quotation marks and citation omitted). Only the evidence in the record below may be considered when determining whether the ALJ's decision is supported by substantial evidence. *Bass v. McMahon*, 499 F.3d 506, 513 (6th Cir. 2007).

Altyg argues that the ALJ improperly assessed his credibility; that the ALJ violated the treating physician rule and improperly weighed physicians' opinions; that the ALJ failed to provide an appropriate hypothetical to the VE; and that the ALJ violated his duty to properly develop the record. The Court disagrees and recommends that the ALJ's decision be affirmed.

**B.**

The ALJ found that Altyg had "a serious credibility problem," and that his subjective complaints were exaggerated and inconsistent with other evidence in the record. [ECF No. 6-2, Tr. 15]. Altyg challenges this determination. Credibility determinations of witnesses are within the province of the ALJ and should not be disturbed "absent compelling reason." *Smith v. Halter*, 307 F.3d 377, 379 (6th Cir. 2001). At the same time, "such determinations must find support in the record." *Rogers*, 486 F.3d at 241. An ALJ must explain the bases of her credibility determination, and the reviewing court should not be left to speculate as to the grounds for the ALJ's decision. *Cox v. Comm'r of Soc. Sec.*, 615 F. App'x 254, 261 (6th Cir. 2015). "[B]lanket assertions that the claimant is not believable will not pass muster, nor will explanations as to credibility which are not consistent with the entire record and the weight of the relevant evidence." *Rogers*, 486 F.3d at 248. Here, the Court finds that the ALJ's credibility determination was supported by substantial evidence.

The ALJ found that his "medically determinable impairments could reasonably be expected to cause the alleged symptoms," but that his "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible for the reasons explained in this

decision." [*Id.*]. The ALJ's conclusion was largely based upon Altyg's

denial that he had been drinking before being in a motor vehicle collision in

December 2012. [*Id.*]. When asked about the report of him drinking and

driving and hitting a tree, Altyg implied that he had not been drinking,

stating that "A policeman wasn't there on the street," and, "If I were drunk,

how could I possibly take control of the wheel the way I did?" [*Id.*, Tr. 37-

38]. He claimed to have been struck by another vehicle and then

consciously swerved into a tree to avoid oncoming traffic. [*Id.*]. The ALJ

contrasts this to medical records from the date of the incident indicating a

blood alcohol level of 163 mg/dL,[4] and hospital record in which Altyg

admitted using alcohol prior to the collision. [ECF No. 6-2, Tr. 15, citing

ECF No. 6-8, Tr. 357; ECF No. 6-9, Tr. 462]. The ALJ also cited as at odds

with Altyg's testimony a medical record from June 2014 indicating that Altyg

was "[a]djusting well. No problem from meds. Sleep is good. No

significant anxiety or depression. Socializes well with family and friends

and attends to personal and family affairs adequately." [ECF No. 6-2, Tr.

17, citing ECF No. 6-9, Tr. 622]. He further found Altyg's allegations to be

inconsistent with the objective medical evidence in the record, and Altyg's

---

[4] This medical record indicated that the normal level is less than 5mg/dL.
[ECF No. 6-8, Tr. 357].

demeanor as evidencing that he was embellishing his condition. [*Id.*, Tr. 15, 17].

Altyg argues that his "misperception and insistence that he was not intoxicated on these traumatic occasions is not relevant as to his credibility regarding the extent of his injuries." [ECF No. 16, PageID 752]. But this is directly contradicted by Social Security Ruling 96-7p, which states, "One strong indication of the credibility of an individual's statements is their consistency, both internally and with other information in the case record." SSR 96-7p, 1996 WL 374186, at *5. Altyg's argument is based on a superseding ruling, SSR 16-3p, but this ruling has an effective date of March 16, 2016, which postdates the ALJ's decision by over a year. *See* SSR 16-3p, 2016 WL 1119029, at *1. SSR 16-3p was passed in order to eliminate use of the term "credibility" from official policy, and to clarify that "subjective symptom evaluation is not an examination of an individual's character." *Id.* The new ruling still requires an ALJ to "consider the consistency of the individual's own statements," by comparing them to "any existing statements the individual made under other circumstances." *Id.*

SSR 16-3p does not change the precedent establishing that the ALJ is entitled to great deference in his credibility determination, given his responsibility to observe and assess Altyg's demeanor and

credibility.  *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 542 (6th Cir. 2007).  Altyg has provided no compelling reason to reverse the ALJ's conclusion that he is not fully credible.

## C.

Altyg argues that the ALJ erred by discounting the determinations of Raad Al-Saraf, M.D., Ashar Khan, M.D., and S. Navuluri, M.D.  The "treating physician rule" requires an ALJ to give controlling weight to a treating physician's opinions regarding the nature and severity of a claimant's condition when those opinions are well-supported by medically acceptable clinical and diagnostic evidence, and not inconsistent with other substantial evidence.  *Gentry*, 741 F.3d at 727-29; *Rogers,* 486 F.3d at 242-43.  "Even when not controlling, however, the ALJ must consider certain factors, including the length, frequency, nature, and extent of the treatment relationship; the supportability of the physician's conclusions; the specialization of the physician; and any other relevant factors," and give appropriate weight to the opinion.  *Gentry*, 741 F.3d at 723.  In all cases, a treating physician's opinion is entitled to great deference.  *Id.*  An ALJ who decides to give less than controlling weight to a treating physician's opinion must give "good reasons" for doing so, in order to "make clear to any subsequent reviewers the weight the adjudicator gave to the treating

source's medical opinion and the reasons for that weight." *Rogers*, 486 F.3d at 242 (quoting SSR 96-2p, 1996 WL 374188, at *5 (1996)). This procedural safeguard not only permits "meaningful appellate review," but also ensures that claimants "understand the disposition of their cases." *Rogers*, 486 F.2d at 242-43 (internal quotation marks and citation omitted). Courts will not hesitate to remand when the ALJ failed to articulate "good reasons" for not fully crediting the treating physician's opinion. *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 545 (6th Cir. 2004).

Dr. Al-Saraf noted in early 2013 that Altyg had "tenderness, muscle spasm, [and] limitation of movement" of the back; wheezing; heart murmurs; and tenderness of the abdomen. [*Id,*, Tr. 565, 566, 567-68]. In November 2013, Altyg complained to Abdullah Omari, M.D., of continued hip pain and knee pain on the left, and was taking 2-3 Vicodin per day to control the pain. [*Id.*, Tr. 583]. Dr. Omari found that Altyg ambulated without a cane, had full range of motion in his knee, had patellofemoral crepitation with passive range of motion, and had deep aching pain in the left knee. [*Id,*. Tr. 585]. In December, Dr. Al-Saraf referred Altyg to a cardiovascular specialist, who found that he had dyspnea (shortness of breath) on exertion and an abnormal EKG. [*Id.*, Tr. 574-75]. He recommended that Altyg quit smoking. [*Id.*].

A CT scan in April 2013 that showed unremarkable liver, gallbladder, spleen, adrenal glands, kidneys, and pancreas, as well as "somewhat ectopic position of the cecum in the high anterior midline abdomen" which was of uncertain clinical significance, and "[o]therwise unremarkable CT appearance of the abdomen and pelvis. Bibasilar atelectasis and/or mild congestion." [*Id.*, Tr. 572-73]. An x-ray in April of the left knee showed no acute abnormality, and one in September 2013 of the pelvis showed stable postsurgical findings. [*Id.*, Tr. 577, 581].

In September 2014, Dr. Al-Saraf provided a physical medical source statement, stating that Altyg's symptoms were severe pain in the lower back and left knee and limitation of movement. [*Id.*, Tr. 615]. He found that Altyg suffered pain on a daily basis that was exacerbated by activity and rated at four out of ten on a pain scale. [*Id.*]. Objective evidence for his ailments consisted of tender lower back, arthritis of the left knee, and positive straight leg testing on the left side. [*Id.*]. Dr. Al-Saraf opined that Altyg could walk one city block without rest or severe pain; could sit for 15-20 minutes at one time; stand for only five minutes at one time; could sit or stand/walk for less than two hours of an eight-hour work day; would need to walk every five minutes for a length of five minutes; and would need unscheduled breaks of one to two hours every day due to muscle

12

weakness, pain/paresthesias, and numbness. [*Id.*, Tr. 616]. He further opined that Altyg would be off task for 25% or more of the typical work day; is incapable of even "low stress" work due to mental illness and chronic pain; and would miss over four days per month due to his impairments or treatment. [*Id.*, Tr. 617].

The ALJ gave this opinion little weight, opining that "the treatment records do not support the severity of the restrictions" and that "it appears as if Dr. Al-Saraf is relying on the subjective complaints of the claimant, which the undersigned deems not credible." [ECF No. 6-2, Tr. 17]. Opposing this conclusion, Altyg cites the deference generally due to a treating physician's opinion and other applicable legal standards. [ECF No. 16, PageID 754-55]. But he does not cite to any portion of the record— from Dr. Al-Saraf or any other physician—to provide support for Dr. Al-Saraf's opinion. [*Id.*]. Thus, the Court deems this argument waived. "[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to ... put flesh on its bones." *McPherson v. Kelsey*, 125 F.3d 989, 995–96 (6th Cir. 1997) (citation and internal quotations omitted). And at any rate, the ALJ's conclusion regarding Dr. Al-Saraf's opinion is supported by

substantial evidence, as there is no evidence that Dr. Al-Saraf treated Altyg in 2014, and the objective evidence Dr. Al-Saraf alleges in his opinion cannot be found in his records.  Further, Altyg had very little treatment for his back and knee impairments in 2014 and was not being treated by an orthopedic or pain specialist prior to Dr. Al-Saraf's opinion.  [ECF No. 6-2, Tr. 17].

As for Dr. Khan, the ALJ correctly noted that he was not a treating physician as Altyg claims; he only treated Altyg on one occasion.  "A physician qualifies as a treating source if the claimant sees her 'with a frequency consistent with accepted medical practice for the type of treatment and/or evaluation required for [the] medical condition.' " *Smith v. Comm'r of Soc. Sec.*, 482 F.3d 873, 876 (6th Cir. 2007) (quoting 20 C.F.R. § 404.1502).  *See also Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 506 (6th Cir. 2006) ("However, a plethora of decisions unanimously hold that a single visit does not constitute an ongoing treatment relationship."). Other than disputing the classification of Dr. Khan as "not a treating physician" based on his own definition of the phrase, Altyg offers no specific objection to the ALJ's treatment of Dr. Khan's opinion.  [ECF No. 16, PageID 755-56].  Likewise, Altyg gives no argument whatsoever against the ALJ's treatment of Dr. Navuluri's opinion, who also does not

14

qualify as a treating physician.  [*Id.*].  Thus, the arguments regarding Dr. Khan's and Dr. Navuluri's opinions are deemed waived.

## D.

Altyg contends that the hypothetical question presented to the VE was inaccurate, rendering the VE's conclusion that he could perform work in the national economy unreliable.  [ECF No. 16, PageID 756-57].  The hypothetical presented to the VE is identical to the RFC in the ALJ's decision, and is thus an indirect attack on the RFC.  [*Compare* ECF No. 6-2, Tr. 13, 43-44].  Altyg bears the burden of proving that he requires a more restrictive RFC.  *Preslar*, 14 F.3d at 1110.  Aside from he arguments against the ALJ's credibility determination and treatment of medical opinions, he offers no support for his attacks on the RFC.

Altyg first claims that the hypothetical question failed to accommodate his "inability to concentrate for lengthy periods of time."  [ECF No. 16, PageID 757].  But the hypothetical presented to the VE allowed for "only simple, unskilled work and should have no jobs requiring concentration on detailed or precision task, multitasking, reading, computing, calculating, or problem solving."  [ECF No. 6-2, Tr. 44].  The same restriction is present in the RFC.  [ECF No. 6-2, Tr. 13].  Altyg does not show that his concentration limitation required a more restrictive RFC.

15

Altyg then attacks the hypothetical for not accommodating his "lack of a high school education and his inability to converse in English without an interpreter." [ECF No. 16, PageID 757]. As to his education level, it is true that he testified to having only an eighth grade education, but as the Commissioner points out, he completed disability application forms indicating that he was educated through twelfth grade. [ECF No. 6-2, Tr. 28; ECF No. 6-6, Tr. 161]. Altyg provides no justification for this discrepancy or for relying on the testimony over the disability form. Furthermore, as the Commissioner notes, any error here would be harmless, as this would qualify as a "marginal education," which allows a claimant to do "simple, unskilled types of jobs." 20 C.F.R. §§ 404.1564(b)(2), 416.964(b)(2). And "the primary work functions in the bulk of unskilled work relate to working with things (rather than with data or people) and in these work functions at the unskilled level, literacy or ability to communicate in English has the least significance." 20 C.F.R. § Pt. 404, Subpt. P, App. 2, § 201.00(i).

Altyg also provides no documentation or evidence that he cannot converse in English without an interpreter other than the presence of an interpreter at the hearing. The presence of a translator, alone, does not raise an illiteracy argument. *Motin v. Comm'r of Soc. Sec.*, No. 09-13354,

16

2010 WL 1754821, at *4 (E.D. Mich. Apr. 30, 2010).  And again, the

Commissioner cites to disability application forms contradicting this claim;

Altyg answered that he was able to speak, read, and understand English,

and that he could write more than his name in English.  [ECF No. 6-6, Tr.

159].  He also appears to have handwritten his answers to the function

report, on which he indicated that he could follow written instructions

"sometimes" and spoken instructions "ok."  [*Id.*, Tr. 174-75].  In his

testimony, he answered at least one of the ALJ's questions in English

without the use of his interpreter.  [ECF No. 6-2, Tr. 31].  Thus, this

argument has no support.

Altyg attacks the hypothetical for failing to incorporate his "inability to

stand and sit for extended periods, his pelvic, knee and shoulder instability

and his long term psychiatric issues" as well.  [ECF No. 16, PageID 757].

But he provides no further argument for this point, other than his previous

arguments about the credibility determination and medical opinions, which

this Court rejects.  The ALJ "is required to incorporate only those

limitations accepted as credible by the finder of fact."  *Casey v. Sec'y of

Health and Human Serv.,* 987 F.2d 1230, 1235 (6th Cir.1993).  As such,

the Court finds no reason to overturn the ALJ's decision based on the

hypothetical posed to the VE or the RFC.

17

**E.**

Finally, Altyg argues that the ALJ should have developed the record further by scheduling a consultative examination or by requesting his doctors to explain his current medical condition. "Where there are obvious gaps in the record, the ALJ has the duty to develop the administrative record with respect to the missing evidence." *Kendall v. Astrue*, No. CIV.A. 2:10-263-DCR, 2011 WL 4388794, at *5 (E.D. Ky. Sept. 20, 2011) (citing *Sims v. Apfel,* 530 U.S. 103, 110–11 (2000)). But as a general rule, "[t]he burden of providing a complete record, defined as evidence complete and detailed enough to enable the Secretary to make a disability determination, rests with the claimant." *Landsaw v. Sec'y of Health & Human Servs.*, 803 F.2d 211, 214 (6th Cir. 1986) (citing 20 C.F.R. §§ 416.912, 416.913(d)). "As long as there is sufficient evidence in the record for him to make a decision regarding the claimant's disability, it is within the discretion of an ALJ to close the record." *Penn v. Comm'r of Soc. Sec.*, No. 1:10CV1885, 2012 WL 646057, at *8 (N.D. Ohio Feb. 28, 2012).

Altyg has failed to show that the ALJ was required to further develop the record. The only specific errors Altyg accuses the ALJ of are that he "impermissibly relied upon his own non-medical opinion" and had no evidence of an improvement in Altyg's condition. [ECF No. 16, PageID

758-59].  But "[t]he ALJ was not required to obtain a medical expert to interpret the medical evidence related to his physical [or mental] impairments.  In fact, the regulations require the ALJ to evaluate the medical evidence to determine whether a claimant is disabled."  *Rudd v. Comm'r of Soc. Sec.,* 531 F. App'x 719, 726 (6th Cir. 2013) (citing 20 C.F.R. § 416.945).  And despite Altyg's claim, the finding of no disability was supported by the opinion of E. Montasir, M.D., who opined in June 2013 that Altyg "will be disabled for probably another six months until completion of his rehabilitation and ability to walk independently."  [ECF No. 6-9, Tr. 552].  Nevertheless, it is Altyg's burden to prove his disability and lack of residual functional capacity for a continuous period of not less than twelve months.  *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 391 (6th Cir. 1999); *Jordan v. Comm'r of Soc. Sec.*, 548 F.3d 417, 423 (6th Cir. 2008). He has failed to meet that burden here.

## III.   CONCLUSION

For the reasons stated above, the Court **RECOMMENDS** that the Commissioner's motion [ECF No. 20] be **GRANTED**; that Altyg's motion [ECF No. 16] be **DENIED**; and the ALJ's decision be **AFFIRMED** pursuant to sentence four of 42 U.S.C. § 405(g).

s/Elizabeth A. Stafford
ELIZABETH A. STAFFORD
United States Magistrate Judge
Dated: July 31, 2017

## NOTICE TO THE PARTIES REGARDING OBJECTIONS

Either party to this action may object to and seek review of this

Report and Recommendation, but must act within fourteen days of service

of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and Fed. R. Civ.

P. 72(b)(2).  Failure to file specific objections constitutes a waiver of any

further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v.*

*Secretary of HHS*, 932 F.2d 505 (6th Cir. 1991)*; United States v. Walters*,

638 F.2d 947 (6th Cir. 1981).  Filing objections which raise some issues but

fail to raise others with specificity will not preserve all objections that party

might have to this Report and Recommendation.  *Willis v. Secretary of*

*HHS*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers*

*Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  A copy of any objection

must be served upon this Magistrate Judge.  E.D. Mich. LR 72.1(d)(2).

Each **objection must be labeled** as "Objection #1," "Objection #2,"

etc., and **must specify** precisely the provision of this Report and

Recommendation to which it pertains.  Not later than fourteen days after

service of objections, **the non-objecting party must file a response** to

the objections, specifically addressing each issue raised in the objections in

20

the same order and labeled as "Response to Objection #1," "Response to Objection #2," etc.  The response must be **concise and proportionate in length and complexity to the objections**, but there is otherwise no page limitation.  If the Court determines that any objections are without merit, it may rule without awaiting the response.

## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on July 31, 2017.

s/Marlena Williams
MARLENA WILLIAMS
Case Manager
